UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


      v.                                                                          **DECISION AND ORDER**
                                                                                      13-CR-165-A
PETER MILITELLO,

                     Defendant.

_____

      Before the Court are numerous *pro se* motions, primarily in the form of

handwritten letter requests, filed by Defendant Peter Militello, who was previously

convicted, upon a plea of guilty, of violating of Title 21, United States Code, Sections

841(a)(1) and 841(b)(1)(C).  Militello's motions were all filed in the wake of a federal

indictment, returned years after Militello's plea and sentence, which charged Drug

Enforcement Administration (DEA) Special Agent (SA) Joseph Bongiovanni, with

corruption involving his efforts to protect certain drug traffickers who were his

acquaintances and/or who were paying him money.  *See*, *United States v*

*Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1.  SA Bongiovanni was the case

agent in Militello's case.

      Militello's pending *pro se* motions consist of the following: (1) a motion to

reopen his case, dismiss his conviction, and suppress evidence which he claims

was gathered SA Bongiovanni who was corrupt (Dkt. 110); (2) a motion seeking to

have his sentence reduced on the ground that he would not have pleaded guilty had

he known that SA Bongiovanni was corrupt (Dkt. 111);[1] (3) a motion for discovery, an evidentiary hearing, disclosure, and release of *Brady* material relating to DEA SA Bongiovanni (Dkt. 121); (4) a motion to appoint counsel (Dkt. 122); (5) a motion for *in forma pauperis* status (Dkt. 123); and (6) a motion to reduce his sentence "pursuant to §2255," based upon a subsequent change in the law which he claims would reduce his maximum sentence principally from a term of imprisonment of 30 years to a term of imprisonment of 20 years. (Dkt. 149).[2]

For the reasons which follow, all Militello's motions are **DENIED**.

## I.     BACKGROUND

### A. Procedural History

On June 11, 2013, DEA SA Bongiovanni signed a criminal complaint charging Militello with knowingly, intentionally and unlawfully possessing with intent to distribute, and distributing heroin and cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).  Dkt. 5.[3]  The complaint describes six different surveilled and audio recorded controlled purchases of heroin

---

[1] Such motion (Dkt. 111) was in the form of a letter directed to Hon. Lawrence J. Vilardo, a different Judge on this Court.

[2] The Court notes that the Government filed three relatively brief memoranda in response to Militello's various pending *pro se* motions. *See*, Dkt. 120, 144, and 151. The Court notes its disappointment in the Government's failure to engage in a more fulsome exploration of the factual context of Militello's claims viz-a-vis the prosecution of SA Bongiovanni, as the Court itself was forced to conduct a searching review of the Docket in the Bongiovanni case in order fully to assess Militello's *pro se* claims.  *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V.

[3] References herein, unless otherwise indicated, are to Docket Entries, in *United States v. Militello*, 13-CR-165-A.

and cocaine base that an undercover police officer (an officer other than Bongiovanni) made from Militello during January and February of 2010. *Id*.  The complaint also describes how Militello, after being taken into custody on February 25, 2010, and advised of his *Miranda* warnings, admitted his drug trafficking activities and signed a consent to search his hotel room, where agents discovered additional quantities of drugs. *Id*.  The complaint further indicates that Militello executed a waiver of speedy arraignment form on February 25, 2010, and was released from custody. *Id*.

The complaint further describes how several years later, on May 25, 2013, a cooperating source (CS) with the DEA was used to make a controlled purchase of heroin from Militello. *Id*.  Subsequent laboratory testing revealed that the substance Militello sold to the CS on May 25, 2013, contained fentanyl. *Id*.  During a recorded conversation with the CS at the time of that controlled purchase, Militello discussed how he, in the presence of the CS a couple of days prior, on May 23, 2013, sold heroin to another individual (identified as "R.R."), which R.R. ingested and died. *Id*.

On June 6, 2013, Militello was arrested, and following his arrest, and the administration of *Miranda* warnings,  Militello admitted to DEA agents, *inter alia*, that he had been selling heroin for years, that he knew the heroin currently being sold contained fentanyl, and that on May 23, 2013, he sold R.R. the drugs which resulted in R.R.'s overdose death. *Id*.

On May 1, 2015, Militello waived indictment and pleaded guilty, pursuant to a written plea agreement, to a one-count Superseding Information which charged him

with possessing with intent to distribute, and distributing fentanyl and heroin, in violation of Title 21, United States Code, Section 841(a)(1). Dkt. 41, 42, 43. Prior to his plea of guilty, the government filed an Information pursuant to 21 U.S.C. § 851, which provided that upon a "conviction of a violation of Title 21 of the United States Code providing for increased punishment in the event of one or more prior final convictions for a felony drug offense," the United States intended to rely, as the basis for the imposition of increased punishment, upon Militello's prior felony conviction, on or about January 16, 2007, in the Erie County Court, Erie County, New York, Docket Number 360-2006, for Criminal Possession of a Narcotic Drug in the fourth degree, in violation of NYS Penal Law § 220.09, subd. 1.  Dkt. 40.

In his plea agreement, Militello admitted, *inter alia*, that on May 23, 2013, he distributed heroin and fentanyl to R.R., who died after ingesting such drugs. *Id*., ¶5(a), (c), and (d). In fact, Militello's DNA was confirmed by forensic analysis to be on the bags of fentanyl he sold to R.R. that were found next to R.R.'s body following his death, on May 23, 2013; on the bags of drugs which the CS bought from him on May 25, 2013; and on the bags of drugs which were seized from Militello at the time of his arrest on June 6, 2013 .  Dkt. 74, p.20.

Militello further agreed that "[p]ursuant to Sentencing Guidelines §1B1.2(a), his sentencing range for imprisonment and a fine shall be determined as if the defendant was convicted of a violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(l)(C) alleging that death resulted from use of the substance." Dkt. 43, ¶7.  Consequently, the plea agreement calculated Militello's guidelines

sentencing range for imprisonment to be 360 months, *see*, Dkt. 43, ¶11, and further provided that Militello agreed to waive his right to appeal or collaterally attack any sentence imposed by the Court that was within or less than that sentencing range of 360 months. Dkt. 43, ¶23.

On November 4, 2015, Militello was, consistent with the terms and conditions of his plea agreement,  sentenced principally to a term of imprisonment of 360 months. Dkt. 54; *Minute Entry*, dated 11/4/15.

On November 17, 2015, Militello filed a Notice of Appeal.  Dkt. 56. On May 15, 2017, the Second Circuit Court of Appeals, citing the appellate waiver provision set forth in Militello's plea agreement, issued a mandate dismissing Militello's appeal. Dkt. 76.

### B.  The Bongiovanni Prosecution

Nearly four years after Militello was sentenced, DEA SA Bongiovanni, the primary case agent in Militello's case, was charged, on October 31, 2019, in an eleven count indictment with various crimes including: conspiracy to defraud the United States; bribery; conspiracy to distribute controlled substances; destruction, alteration, and falsification of records; and making false statements. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1.

The charges against Bongiovanni generally involved allegations that Bongiovanni corruptly used his position as a DEA SA to shield certain friends and associates from criminal investigations. *See*, *United States v Bongiovanni*, WDNY

Case # 19-CR-227-V, Dkt. 1, pp. 5-9. The indictment alleged that he did so by: receiving bribes; providing sensitive law enforcement information (including information about the existence of investigations, the status of investigations, the identity of cooperators, and specific law enforcement techniques being used); utilizing law enforcement deconfliction databases as a means to obtain notice of law enforcement investigations involving those he was seeking to protect; feigning legitimate investigations involving those he was protecting; and falsifying reports and documents. *Id*. All of these activities were undertaken in furtherance of his effort to protect his friends, associates, and coconspirators from investigation, arrest, prosecution, and potential incarceration. *Id*.

While Militello's name is referenced in the Bongiovanni indictment, it appears in the context of Militello being falsely identified by Bongiovanni as a DEA Confidential Source who provided certain information regarding a specific DEA File, *i.e.*, DEA Case File #C2-13-0026, that Bongiovanni was alleged to have opened exclusively to protect drug traffickers, friends, and associates who were paying Bongiovanni bribes. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1, pp. 11-14, 17, 26. Notably, the indictment also alleged unequivocally that the "Peter Millitello was not the source in DEA Case Number C2-13-0026." *Id*., p. 26. Beyond the foregoing, the allegations of misconduct or criminality committed by SA Bongiovanni had nothing to do with his involvement in the investigation or prosecution of Militello.

In fact, during Bongiovanni's trial, the government subpoenaed Militello to testify as a government witness. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 789, 790, 1064, 1065. Transcripts from that trial reveal that on February 28 and February 29, 2024, the government sought to ask three questions to Militello, who was represented, for purposes of his being subpoenaed to testify, by attorney Judith A. Kubiniec, Esq. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1065, p. 5. Those questions were: (1) "Were you ever an informant for Joseph Bongiovanni?", *id.*, p. 5; (2) "[D]id the defendant, Joseph Bongiovanni, arrest you?", *id.*, p. 8; and (3) "Are you serving 30 years in prison in connection with [Joseph Bongiovanni]'s arrest of you?" *Id*. Militello, contrary to the advice of his attorney, *see*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1065, pp. 5-6, and despite being repeatedly directed to do so by the Court, *see*, *id.*, pp. 6, 8, 10-14, refused to answer the government's questions. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1064, pp. 4-8. Consequently, Judge Vilardo held Militello in the civil contempt of court for the duration of trial. *Id.*, p. 7; *see also*, Dkt. 790.

On April 12, 2024, a jury returned a verdict convicting Bongiovanni of two counts of the indictment which charged him with obstruction of justice and making a false statement. The jury acquitted him on one obstruction count and was unable to reach a verdict on the remaining counts. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 867.

Approximately four months later, in August of 2024, Bongiovanni's was retried on eleven open counts.  On October 10, 2024, a second jury returned a verdict convicting Bongiovanni on seven of those counts, including bribery conspiracy, drug trafficking, obstruction, and false statement charges.  *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1283, 1285. On January 21, 2026, Judge Vilardo sentenced Bongiovanni principally to concurrent terms of imprisonment of 60 months on each of the nine counts of which he was ultimately convicted. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1664, 1674.

### C.  Militello's First Habeas Petition

Prior to SA Bongiovanni's ever being charged, Militello, on October 9, 2018, filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. Dkt. 79. This Court dismissed that §2255 as untimely. Dkt. 83. Following the dismissal of his first § 2255 motion, Militello filed three successive *pro se* motions seeking appointment of counsel. Dkt. 84, 86, and 88.  This Court denied each of those motions. Dkt. 85, 87, 89. While Militello filed a Notice of Appeal relative to this Court's denial of his third motion for appointment of counsel, *see*, Dkt. 91, the Second Circuit, on January 28, 2021, issued a mandate denying Militello's motion for the appointment of counsel and dismissing the appeal upon its finding that it "lacks an arguable basis either in law or in fact." Dkt. 105.

### D.  The Instant Motions[4]

After being held in contempt for refusing to testify at Bongiovanni's first trial, Militello, since April of 2024, has filed six different *pro se* motions in which he seeks to attack his conviction, his sentence, or both. Dkt. 110, 111, 121, 122, 123, 149.

First, on April 3, 2024, Militello filed a *pro se* motion styled as an "omnibus motion." Dkt. 110. In it, Militello seeks various forms of relief based upon the allegations set forth in Bongiovanni's 2019 indictment. *See*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1.  Specifically, Militello's motion requests: (1) that his case be "reopened," Dkt 110. pp. 4-7; (2) that his case be dismissed based on newly discovered evidence that establishes a due process violation, *id*., pp. 8-10; and/or (3) that the evidence against him be suppressed. *Id*., pp. 10-12.  In his motion, Militello cites the fact that he is mentioned in Bongiovanni's indictment and the fact that the government subpoenaed him to testify at Bongiovanni's (first) trial. Dkt. 110, p. 3, ¶¶3-4.  He also alleges, in conclusory fashion, that in 2010 and 2013, Bongiovanni and possibly other DEA agents "shook [him] down" to obtain money from him. Dkt. 110, pp. 2-3, ¶¶1-2. Militello further claims that when he failed to pay Bongiovanni the money he promised him, Bongiovanni, on June 6, 2013, "tracked [Militello] down and arrested [him]…using

---

[4] While Militello currently has six *pro se* motions pending, see, Dkt. 110, 111, 121, 122, 123, 149, the Docket in his case demonstrates that since he pleaded guilty and was sentenced in late-2015, Militello has filed over 20 *pro se* motions or letter requests seeking various forms of relief from this Court, *see*, Dkt. 57, 58, 77, 79, 84, 86, 88, 93, 94, 96, 101, 106, 110, 111, 121, 122, 123, 124, 137, 140, 141, and 149, and has twice unsuccessfully appealed this Court's rulings to the Second Circuit.  *See*, Dkt. 76, 105.

falsified information." Dkt. 110, p.3, ¶2.  Militello's motion seeks to analogize his situation to that of another individual, Tyshawn Brown, who like Militello, was charged with drug trafficking crimes as part of an investigation being led by DEA SA Bongiovanni. Dkt. 110, pp. 4-7; *see*, *United States v. Tyshawn Brown*, WDNY Case # 19-CR-222-W.  Unlike Militello, however, who pleaded guilty and was sentenced long before the investigation of Bongiovanni ever even commenced,[5] Brown's indictment was pending at the same time as Bongiovanni's indictment, and as part of his pretrial motions, Brown requested *Brady/Giglio* material specifically pertaining to Bongiovanni. *United States v. Tyshawn Brown*, WDNY Case # 19-CR-222-W, Dkt. 23, pp. 12-19.

On June 13, 2024, Militello filed a second *pro se* handwritten letter requesting a "reduced sentence due to the fact that [he] would have never signed a plea agreement with all of this mounting, exculpatory evidence that had been brought to light by the government involving corrupt D.E.A. Agent Bongiovanni." Dkt. 111.

---

[5] As reflected in the testimony adduced at Bongiovanni's trial, the government's investigation of Bongiovanni did not commence until after the April 18, 2017, arrest of a marijuana trafficker named Ronald Serio, a marijuana dealer that was one of the individuals that Bongiovanni was charged with attempting to protect. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1551, pp.39-40.  Specifically, it wasn't until a July 20, 2018, proffer that Serio first advised law enforcement that Bongiovanni was engaged in criminal conduct. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1551, p.51; *see also*, *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1603, pp.11-15, 19-22 (testimony of Homeland Security Investigations [HSI] SA Curtis Ryan, lead case agent in *Bongiovanni* investigation). As SA Ryan testified, prior to such proffer, the thought of investigating SA Bongiovanni never entered his mind before that day. *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1603, p.13. Thus, the Bongiovanni investigation began on July 20, 2018, over 3 years *after* Militello's May 1, 2015, plea in this case.

On August 2, 2024, Militello filed a third *pro se* handwritten letter in which he seeks discovery and an evidentiary hearing regarding DEA SA Bongiovanni's conduct and the fact that "Robert Kaiser," who served as a CS in Militello's case, was also called to testify as a government witness against SA Bongiovanni. *See*, Dkt. 121. Militello alleges that "in light of this newly discovered evidence of the lead investigator in my case Joseph Bongiovanni, my plea agreement was not knowing and voluntary and the government also has a[n] obligation to turn over *Brady* and *Giglio* material." Dkt. 121, p.2. Specifically, Militello seeks "an evidentiary hearing so as to produce the type of evidence necessary to demonstrate that there were occurrences of misconduct by an officer that predated [Militello]'s plea such that they would have altered his decision to plead guilty." *Id*.

On August 8, 2024, Militello filed a handwritten letter seeking the appointment of counsel, *see*, Dkt. 122, and on August 23, 2024, Militello filed a handwritten letter seeking to be granted *in forma pauperis* (IFP) status. Dkt. 123.

Most recently, Militello, on December 23, 2025, filed a handwritten motion requesting a "2255 sentence reduction" based upon a change in the law which he claims reduces his maximum possible sentence from 30 years to 20 years. Dkt. 149.

## II.    DISCUSSION

Except for his most recent motion seeking a sentence reduction "pursuant to § 2255" based upon an "intervening change in the law," *see*, Dkt. 149, p.1, Militello does not cite any procedural rule or law authorizing his other five *pro se*

motions/letters which seek varying forms of relief that include: (1) reopening of his case, *see*, Dkt. 110, pp. 4-7; (2) dismissal of his case, *see*, Dkt. 110, pp. 8-10; (3) the suppression of evidence, *see*, Dkt. 110, pp. 10-12;  (4) a reduction of his sentence on the grounds that he "would have never signed a plea agreement with all of this mounting exculpatory evidence that has been brought to light by the government involving corrupt DEA Agent Bongiovanni," *see*, Dkt. 111;  (5) an evidentiary hearing to produce evidence to demonstrate that there were occurrences of misconduct by Bongiovanni that predated his plea that would have altered his decision to plead guilty, *see*, Dkt. 121; (6)  the appointment of counsel, *see*, Dkt. 122; and (7) a grant of IFP status, see, Dkt. 123.  Despite Militello's failure largely to provide the procedural rule upon which he relies as authorizing his motions, because Militello is proceeding *pro se*, the Court will nevertheless construe his pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  As the Second Circuit has recently recognized:

> It is well-established that federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. 28 U.S.C. § 2255(a) governs claims of the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence.  In determining whether a motion was made under section 2255, we look to the relief sought in the motion rather than what label the movant used.

*United States v. Duron*, No. 24-963, 2025 WL 3702751, at *1 (2d Cir. Dec. 22, 2025)(citations, alterations, and quotations omitted).

Considering the various forms of relief Militello seeks and construing his requests in the light most favorable to him, the Court, will analyze his motions under any and all procedural rules that might arguably be invoked to afford him the relief he seeks. Thus, his motions will be examined as requesting: (1) a new trial, pursuant to Rule 33 (Dkt. 110, 121); (2) withdrawal of his guilty plea, pursuant to Rule 11 (Dkt. 110, 121); (3) an order vacating, setting aside, or correcting his sentence, pursuant to 28 U.S.C. § 2255 (Dkt. 110, 111, 121); and (4) a sentence reduction, pursuant to the First Step Act and 28 U.S.C. § 2255 (Dkt. 149). In addition, the Court will also address his ancillary motions requesting appointment of counsel (Dkt. 122) and the granting of IFP status (Dkt. 123).

### A. <u>Motion for a New Trial – Rule 33</u>   (Dkt. 110, 111, and 121)

First, the Court liberally construes Militello's motions at Dkt. 110, 111, and 121 as seeking a new trial pursuant to Federal Rule of Criminal Procedure 33. Under this rule, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). Such motion may be made upon any grounds within fourteen days of the verdict. *Id*. 33(b)(2). Otherwise, a motion may only be made based on newly discovered evidence and must be filed within three years of "the verdict or finding of guilty." *Id*. 33(b)(1).

At the outset, the Court observes that it has serious doubts whether relief under Rule 33 is even available to those, like Militello, who have pleaded guilty and not gone to trial. *See*, *United States v. Nkanga*, 450 F. Supp. 3d 491, 494 (S.D.N.Y. 2020)("Rule 33(a) is simply inapplicable because [Defendant] pleaded guilty and did not go to trial."). Although the Second Circuit has apparently not specifically decided this issue, other Courts of Appeals, including both the First, Fourth, Fifth, Sixth, Ninth, and Tenth Circuit have all held a Rule 33 motion for a new trial does not provide the appropriate vehicle to bring a post-conviction claim to revoke a guilty plea. *See*, *United States v. Strom*, 611 F. App'x 148, 149 (4th Cir. 2015)("By its express terms, Rule 33 is confined to those situations in which a trial has been had." [citation omitted]) ; *United States v. Gilliam*, No. 02-6163, 2003 WL 22435662, at *2 (6th Cir. Oct. 23, 2003)("Rule 33 is simply inapplicable in the context of a guilty plea where, by definition, the conviction was not obtained pursuant to a trial."); *United States v. Graciani*, 61 F.3d 70, 78 (1st Cir. 1995) ("A defendant who enters a guilty plea cannot thereafter use Rule 33 as a wedge to undo his acknowledgement that he committed the offense."); *United States v. Collins*, 898 F.2d 103, 104 (9th Cir. 1990)(" Rule 33 applies only to cases in which a trial has occurred.")(per curiam); *United States v. Lambert*, 603 F.2d 808, 809 (10th Cir. 1979)( "the validity of a guilty plea cannot be questioned by way of a motion for new trial."); *Williams v. United States*, 290 F.2d 217, 218 (5th Cir. 1961)(per curiam); *see also*, *United States v. Evans*, No. 4:14-CR-97 ALM/KPJ, 2018 WL 6981230, at *1 (E.D. Tex. Dec. 18, 2018), *report and recommendation adopted*, No. 4:14-CR-97, 2019 WL 137594 (E.D. Tex. Jan. 7, 2019)(collecting cases).

Notwithstanding the foregoing, even assuming *arguendo*, that Rule 33 might properly be applied in a situation in which an individual—like Militello—has pleaded guilty, the Rule does not afford him any relief. Militello's first motion seeking to attack his conviction, *i.e.*, Dkt. 110, was filed on April 3, 2024.  His judgment became final on May 15, 2017, the date on which the Second Circuit issued its mandate dismissing his direct appeal. Dkt. 76; *see*, *United States v. Camacho*, 370 F.3d 303 (2d Cir. 2004)( Rule 33(b)(1)'s three-year time limit for filing such motion begins to run on the date on which the Court of Appeals issues its mandate on defendant's direct appeal); *United States v. Allen*, No. 09-CR-329-A, 2025 WL 2916981, at *2 (W.D.N.Y. Oct. 14, 2025)(same). Thus, the earliest of his pending motions, *see*, Dkt. 110, a motion filed on April 3, 2024, was filed nearly seven years after his judgment became final on May 15, 2017, *see*, Dkt. 76, well-outside of Rule 33(b)(1)'s three-year window.

Nevertheless, this Court, in construing Militello's claim in a light most favorable to him, has reviewed the Docket in this case and noticed that on March 20, 2020, Militello filed a handwritten "letter motion" with the Clerk of Court in which he requested that he was entitled to a new trial or reduction in sentence based upon the fact that SA Bongiovanni had then-recently been indicted. Dkt. 84, p. 2.  However, even assuming *arguendo*—(1) that such motion, and the newly-discovered evidence set forth therein, *i.e.*, derogatory information regarding the DEA Agent overseeing his case, could be construed as bringing Militello's claims regarding SA Bongiovanni's misconduct within Rule 33(b)(1)'s three-year time period running from the date on

which his judgment became final; and (2) that Rule 33 can be applied to those, like Militello who pleaded guilty—this Court determines that such claim would still fail on the merits.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir.2001). "For a trial judge to grant a Rule 33 motion, he must harbor 'a real concern that an innocent person may have been convicted.' " *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007) (quoting *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007)). Further, courts "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.' " *Ferguson*, 246 F.3d at 134 (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

Here, the Court has no "real concern that an innocent person may have been convicted" or that Defendant's guilty plea reflects any injustice. *Parkes*, 497 F.3d at 232 (quoting *Ferguson*, 246 F.3d at 134).  Militello asserts that he would not have pleaded guilty had he known what he characterizes as the derogatory *Brady/Giglio* information regarding SA Bongiovanni. Dkt. 110, pp.4-7; Dkt. 121, pp.1-3.  However, the Government investigation of Bongiovanni did not commence until July 2018, over three years after Militello's guilty plea and over two-and-one-half years after Militello was sentenced. *See*,  *United States v Bongiovanni*, WDNY Case # 19-CR-227-V, Dkt. 1551, p.51; Dkt. 1603, pp.11-15, 19-22.  Thus, at the time of Militello's plea and sentence, the government possessed no undisclosed derogatory

information regarding SA Bongiovanni, and therefore, there was no *Brady/Giglio* violation relative to such information.

Moreover, the nature of the misconduct and crimes committed by SA Bongiovanni does not diminish the reliability of the evidence underlying Militello's conviction. As noted, the evidence developed in the Bongiovanni investigation revealed that Bongiovanni corruptly used his official position to shield certain friends and associates from criminal investigations. As it pertains to Militello, the allegations and evidence demonstrated that Bongiovanni falsely identified Militello as a confidential source of information in a particular DEA File (*i.e.*, DEA Case File #C2-13-0026) that pertained to individuals that Bongiovanni was attempting to protect. The evidence presented at Bongiovanni's trial demonstrated that he did so in order that he could use Militello's arrest in this case as a justification to support his claim that his investigation of those individuals who were the targets/subjects of that file (*i.e.*, the individuals that Bongiovanni was seeking to protect) could no longer be pursued as his purported informant (Militello) had been arrested.

Stated simply, aside from the fact that Bongiovanni himself may have been corrupt, there is no evidence to suggest that there was any impropriety in the investigation of  Militello or the evidence collected against him. To the contrary, and as admitted to by Militello himself under oath at the time of his plea, he had distributed the heroin and fentanyl to R.R., that R.R ingested and that resulted in R.R.'s death. He further admitted in the factual basis of his plea agreement: that he sold narcotics to a DEA cooperator, and that he had been selling drugs for all his

"whole life." Moreover, forensic DNA testing confirmed that Militello's DNA was on the bags of fentanyl that were found near R.R.'s body following R.R.'s death, the bags of fentanyl Militello sold to the DEA cooperator, and those recovered from Militello's person at the time of his arrest. Finally, notably absent from any of Militello's submissions is any claim of innocence. Under all these circumstances, this Court has no "real concern that an innocent person may have been convicted." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). Accordingly, even if the Court we to conclude that Rule 33 could be applied to his situation, it affords Militello no relief, and to the extent his motions may be read as seeking relief under that rule, such motions are **DENIED**.

B. <u>Withdrawal of His Guilty Plea – Rule 11</u>  (Dkt. 110, 111, and 121)

The Court next construes his submissions as, in the alternative, seeking to withdraw his guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure, as he alleges that had he received information about SA Bongiovanni he would not have entered into the plea agreement. *See* Dkt. 110, 111, and 121.

Pursuant to Rule 11(e) of the Federal Rules of Criminal Procedure, "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e); *see also United States v. James*, 307 F. App'x 503, 505 (2d Cir.2009) (summary order) ("[Defendant] is not entitled to withdraw a guilty plea after sentencing if that sentence has not been vacated."). The present motion is clearly made after sentencing, and the sentence has not been vacated. Further, Militello

18

waived his right to appeal or to attack his conviction collaterally. In fact, that issue was addressed by the Second Circuit on Militello's direct appeal, in which the Court of Appeals dismissed such appeal relying upon the provisions of his plea agreement which forbade him from appealing or collateral attacking his conviction. Dkt. 76. Militello was advised prior to entering his plea of the finality of his decision, as well as his waiver of the right to appeal or collaterally attack the conviction, Dkt. 74, pp. 26-27, and that in so doing, he was "waiving the right to challenge the sentence in the event that in the future, he becomes aware of a previously unknown fact … which [he] believes would justify a decrease in his sentence." *Id.*, p. 27.

Accordingly, to the extent Militello's motions may be construed as requests to withdraw his guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure, such requests are unavailing, and his motions are **DENIED**.

### C. <u>Motion to Vacate, Set Aside, or Correct Sentence</u>  (Dkt. 110, 111, 121)

Alternatively, this Court may also construe Defendant's motions filed at Dkt. 110, 111, and 121, as seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

If his requests are individually or collectively treated as a motion[s] to vacate pursuant to 28 U.S.C. §2255, Militello must carry the burden of proof of establishing his entitlement to the relief he seeks by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). However, as the Second Circuit has already concluded in its Mandate dismissing the direct appeal, *see*, Dkt. 76, Militello,

as part of his plea agreement, gave up his right to appeal his conviction. *Id*.

Because those very same provisions of his plea agreement similarly indicated that

Militello was also waiving his right collaterally to attack his sentence, he cannot carry

his burden as he has knowingly, intelligently, and voluntarily relinquished his right to

the relief he seeks.[6]

### 1. <u>Procedural Default</u>

Under the procedural default doctrine, a guilty plea may not be collaterally

attacked unless first challenged on direct review; if a defendant fails to do so, the §

2255 claim is considered procedurally defaulted. *See Bousley v. United States*, 523

U.S. 614, 621 (1998). The purpose of this doctrine is to promote the "important

interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504

(2003). Accordingly, claims that are not raised on direct appeal are deemed

"procedurally defaulted." *Bousley*, 523 U.S. at 622. "Where a defendant has

procedurally defaulted a claim by failing to raise it on direct review, the claim may be

---

[6] Following the issuance of the Second Circuit's Mandate dismissing his direct appeal, Militello, on Mach 20, 2020, April 27, 2020, and May 5, 2020, filed three successive motions seeking the appointment of counsel. Dkt. 84, 86, and 88. In each motion, Militello, citing the then-recent indictment of SA Bongiovanni, sought to have counsel appointed to represent him. In each motion, Militello, citing the charges against Bongiovanni, alleged that based upon "false statements" made by Bongiovanni, Militello was "coerced into accepting a plea bargain for 30 years." *See*, Dkt. 84, p. 2; Dkt. 86, p. 1. Following each motion, this Court denied Militello's request for appointment of counsel, citing the fact that there was no proceeding before the Court at that time and that the allegations set forth in Militello's motions were conclusory. Dkt. 85, 87, and 89. Militello appealed this Court's denial of his motion to appoint counsel to the Second Circuit. Dkt. 91. On January 28, 2021, the Second Circuit denied Militello's motion for appointment of counsel and dismissed his appeal "because it 'lacks an arguable basis either in law or in fact.'" Dkt. 105.

raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " *Id*. (citations omitted).

Here, nowhere in any of his many post-conviction motions filed in this case does Militello claim that he is actually innocent. In this context, actual innocence means "factual innocence[.]" *Bousley*, 52 3 U.S. at 623. "[M]ere legal insufficiency" is not enough to meet this standard. *Id*.  Militello's failure to allege his is factually innocent is understandable in view of the evidence he admitted to, under oath, at the time of his plea. As already noted, that evidence included that he distributed heroin and fentanyl to R.R., that R.R ingested that heroin and fentanyl; and that as a result of ingesting the heroin and fentanyl provided by Militello, R.R. died.  Militello further admitted: that he sold narcotics to a DEA cooperator; that he had been selling drugs for all his "whole life;" and that forensic DNA testing confirmed that Militello's DNA was: on the bags of fentanyl that were found near R.R.'s body following R.R.'s death, on the bags of fentanyl that Militello sold to a DEA cooperator, and on the bags discovered on his person at the time of his arrest.

Thus, to escape procedural default of his claim, Militello is left with attempting to establish cause and prejudice.  While Militello can establish the former, he cannot establish the latter.  With respect to cause, "[t]he Supreme Court has stated that 'cause' ... must be something external to the petitioner, something that cannot be fairly attributed to him." *United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995) (quotations and citations omitted); *see also Gupta v. United States, 913 F.3d 81, 84 (2d Cir. 2019)* ("In order to demonstrate cause, a defendant must show some

objective factor external to the defense ... such that the claim was so novel that its legal basis [was] not reasonably available to counsel" (alteration in original) (quotations and citations omitted)). Here, Militello can establish cause. Because the derogatory information regarding SA Bongiovanni was unknown to the Defendant (and the prosecution) at the time of his direct appeal, neither he nor his attorney could have raised it on direct appeal. *See*, *United States v. Silverio*, No. 22-CR-15 (PKC), 2024 WL 4528160, at *3 (S.D.N.Y. Oct. 18, 2024)("'Cause' may be shown by, for example, a legal or factual basis that was not available during the time the defendant could have made a direct appeal.").

Despite being able to establish cause for his failure to raise the issue on direct appeal, Militello cannot establish that he suffered any actual prejudice because of Bongiovanni's actions or criminal conduct. "Actual prejudice means that the error alleged in the § 2255 motion 'worked to [a defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *United States v. Heatley*, No. 15-CV-9534 (LAP), 2024 WL 4451962, at *3 (S.D.N.Y. Oct. 9, 2024), *certificate of appealability denied*, No. 24-3111, 2025 WL 3531942 (2d Cir. June 18, 2025)(quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986) and *United States v. Frady*, 456 U.S. 152, 170 (1982)). A mere "possibility of prejudice" is insufficient. *Frady*, 456 U.S. at 170. When challenging a guilty plea, a defendant must show that the error was a "fundamental defect which inherently result[ed] in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Williams v. United States*, No. 10 CR 431-08 (CM), 2017

WL 532469, at *3 (S.D.N.Y. Feb. 3, 2017) (internal quotation omitted). Where, as here, the conviction is based upon a guilty plea, "prejudice has been defined to require a defendant to 'show that there is a reasonable probability that, but for the error, he would not have pleaded guilty.'" *Heatley*, 2024 WL 4451962, at *3 (quoting *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020)).

The Government's obligation to disclose *Brady* materials is pertinent to the accused's decision to plead guilty; the defendant is entitled to make that decision with full awareness of favorable (exculpatory and impeachment) evidence known to the Government. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.), *reh'g denied*, 136 F.3d 262 (2d Cir.1998). Here, it cannot be said that the derogatory information regarding Bongiovanni upon which Militello relies was known to the government at the time of his plea, because the record demonstrates that the Government did not become aware of such information until long after Militello pleaded guilty and was sentenced. In the context of withdrawal of a guilty plea because of newly disclosed Government information, "evidence is considered material where 'there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial.' " *Id*. at 256 (quoting *Tate v. Wood*, 963 F.2d 20, 24 (2d Cir.1992)). This test is objective, involving an inquiry into the likely persuasiveness of the undisclosed information. *See id*.

Here, although the undisclosed information was not known to the government at the time of Militello's plea, even if it was, it does nothing to detract from the

overwhelming evidence of Militello's drug trafficking activities or his role in providing

the drugs which resulted in R.R.'s death.  Moreover, as part of its plea agreement

with Militello, the government agreed to dismiss the Superseding Indictment, *see*,

Dkt. 25, that was pending against him. Dkt. 43, ¶16.  Count 8 of that Superseding

Indictment charged Militello under the so-called "death results" provisions of 21

U.S.C. §§841(a)(1) and 841(b)(1)(C), for his role in distributing the heroin and

fentanyl that resulted in the death of R.R. *See*,  Dkt. 25, p. 5.  The remaining counts

charged nine additional counts alleging violation of 21 U.S.C. §§841(a)(1) and

841(b)(1)(C). *Id*.  In view of his prior felony drug conviction, had Militello been

convicted under Count 8 of the Superseding Indictment, he would have faced a

maximum term of imprisonment of life.  *See*, 21 U.S.C. § 841(b)(1)(C).  For each

other count Militello would have faced a maximum term of 30 years.  *Id*. In entering

the plea agreement that he did, Militello, by receiving a three-level  downward

adjustment for acceptance of responsibility, reduced his total offense level from 43 to

40, which, at a criminal history category of VI, reduced his sentencing range for

imprisonment from "life" to "360 months to life." Moreover, in not requiring Militello to

plead to Count 8, which alleged the "death results" enhancement on 21 U.S.C.

§841(b)(1)(C), Militello received the further benefit of reducing the statutory

maximum term of imprisonment he faced from life to 30 years. *See*, Dkt. 43, ¶1.

Under these circumstances, and considering the strength of the evidence against

him, this Court is unable to conclude that there is a "reasonable probability that, but

for the error, he would not have pleaded guilty.'" *Heatley*, 2024 WL 4451962, at *3

(quoting *United States v. Dussard*, 967 F.3d at 156).

Beyond the strong evidence of Militello's guilt and the significant benefits he received from his plea of guilty is the lack of any evidence that  Bongiovanni's misconduct and criminal acts—which "involved tipping drug dealers about police investigations…[and] did not involve falsely accusing or framing defendants," *see*, *Bell v. United States*, 296 F.3d 127, 129 (2d Cir. 2002), did nothing to undermine the integrity of the Militello investigation or the reliability of the overwhelming evidence against him. Consequently, the Court finds that Militello cannot establish actual prejudice sufficient to overcome the fact that he has procedurally defaulted on his claim.

### 2.  Second or Successive Motion

Even if this Court were to conclude that Militello had not procedurally defaulted on his various motions, he faces yet another barrier to this Court granting him the relief he seeks.  That barrier is the bar on second or successive §2255 motions. In this regard, the Court notes that Militello, on October 9, 2018, previously filed a motion to vacate pursuant to § 2255.  *See*, Dkt. 79.  This Court denied that motion as untimely on January 23, 2019. Dkt. 83.

A dismissal of a habeas corpus petition as untimely constitutes an adjudication on the merits and renders a subsequent petition successive. *See Villanueva v. United States*, 346 F.3d 55, 61 (2d Cir. 2003)("a habeas or § 2255 petition that is properly dismissed as time-barred under AEDPA constitutes an adjudication on the merits for successive purposes."); *United States v. Adams*, No. 15-CR-410 (LAK), 2025 WL 1636249, at *2 (S.D.N.Y. June 9, 2025)(same). Thus,

Militello's various requests for relief, if treated as §2255 petitions, must also be viewed as a second or successive petition. *See Corrao v. United States*, 152 F.3d 188, 191 (2d Cir. 1998) (holding that §2255 is second or successive when a prior motion was adjudicated on the merits).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) strictly limits the filing of a second or successive §2255 petition. *See Jones v. Hendrix*, 599 U.S. 465, 469 (2023).  Pursuant to AEDPA, a petitioner may not file a successive habeas petition under 28 U.S.C. § 2255 unless such petition is certified by a panel of the Second Circuit to "contain: '(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.' " *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004) (quoting 28 U.S.C. § 2255(h)). As the Supreme Court recently recognized, "§ 2255(h)(1) permits a second or successive § 2255 motion if the petitioner identifies 'newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense.'"  *Bowe v. United States*, ---U.S.---, 146 S. Ct. 447, 463–64 (2026).

Here, although Militello does not characterize his requests for relief as being filed pursuant to 28 U.S.C. § 2255(h), in view of the nature of the relief sought and

the claim raised,  *i.e.*, newly discovered evidence regarding the misconduct and

criminal conduct committed by DEA SA Bongiovanni the primary case agent in his

case, the Court determines that they may reasonably be construed as requests

under that section.  If they are, then they amount to second or successive motions

that have not been certified by the Second Circuit.

In this Court's view, although Militello's claims "satisfy[y] the requirement of a

prima facie showing of new evidence," he "fails to make a prima facie showing that

'no reasonable factfinder' would have convicted him had the evidence been

available." *Bell v. United States*, 296 F.3d at 129 (Second Circuit found that

petitioner was not entitled to consideration of his successive postconviction motion

on the basis of newly discovered evidence that his conviction was secured through

the use of false or perjured testimony; although petitioner made a prima facie

showing that his claim is based on newly discovered evidence, his application did

not make a prima facie showing that no reasonable factfinder would have found him

guilty of the offense).  As the *Bell* Court recognized in finding petitioner's showing to

be insufficient to establish that no reasonable factfinder would have found him guilty

of the offense and denying his request to file a successive petition:

> The misconduct for which [the law enforcement officer] was
> convicted involved tipping drug dealers about police investigations; so
> far as [Petitioner] reveals, it did not involve falsely accusing or framing
> defendants.
>
> In order to determine whether [Petitioner]'s trial was
> impermissibly tainted by [the law enforcement officer]'s misconduct, we
> would need to know more about the circumstances of [Petitioner]'s
> conviction. If the evidence against [Peitioner] was overwhelming and
> substantiated by witnesses who were not involved in criminal activity,

27

>the fact that [the law enforcement officer] himself engaged in unrelated criminal activity, if that be the case, might not warrant further habeas corpus review of [Petitioner]'s conviction. Conversely, if [Petitioner]'s testimony was key to the conviction, and in particular if there are reasons to believe that [the law enforcement officer] perjured himself in [Petitioner]'s case, then further consideration of habeas relief may be appropriate. Because [Petitioner]'s application contains insufficient information to make that determination, it must be denied.

*Bell*, 296 F.3d at 129.  This Court believes that the same rationale also applies to Militello's case—perhaps with even greater force in view of Militello's knowing and voluntary plea of guilty and his admissions at the time of such plea. Militello cites no newly discovered evidence which negates his guilt but only evidence which impugns the integrity of the agent overseeing his investigation. In this Court's view, Militello's showing falls far short of establishing  by clear and convincing evidence that no reasonable factfinder would have found him guilty.   "[Militello] pleaded guilty and his sworn statements in support of his guilty plea 'carry a strong presumption of verity,' *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), which his present assertions do not overcome."  *Donato v. United States*, No. 18-1630, 2018 WL 11321474, at *1 (2d Cir. June 28, 2018).  As the Second Circuit observed in *Donato*:

>Despite Petitioner's contrary arguments, the proffered new evidence does not exculpate him but, at most, provides a basis for impeaching [a] prosecution witness . . .. For much the same reason that the Constitution does not require "pre-guilty plea disclosure of impeachment information," *United States v. Ruiz*, 536 U.S. 622, 629 (2002), the post-conviction identification of such information is hardly sufficient to allow a defendant who pleaded guilty to satisfy § 2255(h)(1).

*Donato*, 2018 WL 11321474, at *1.

Assuming *arguendo* that his motions are appropriately considered as requests brought pursuant § 2255, Militello bears the burden of proof by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). However, as the Second Circuit has already concluded in its Mandate dismissing Militello's direct appeal, *see*, Dkt. 76, he, as part of his plea agreement, gave up his right to appeal his conviction. *Id*. (wherein Second Circuit dismissed Militello's appeal because he failed to "demonstrate[] that the waiver of his appellate rights is unenforceable under *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000).").  Because those very same provisions of his plea agreement endorsed by the Second Circuit in dismissing Militello's direct appeal apply with equal force and effect to Militello's waiver of his right collaterally to attack his sentence, he cannot carry his burden of establishing his entitlement to relief.[7] Indeed, "[a] waiver of the right to collaterally attack a conviction is presumptively enforceable." *Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023). Courts "will not enforce" a "plea agreement's collateral-attack waiver" in "only five circumstances": "(1) where the

---

[7] Following the issuance of the Second Circuit's Mandate dismissing his direct appeal, Militello, on Mach 20, 2020, April 27, 2020, and May 5, 2020, filed three successive motions seeking the appointment of counsel. Dkt. 84, 86, and 88.  In each motion, Militello, citing the then-recent indictment of SA Bongiovanni, sought to have counsel appointed to represent him. In each motion, Militello, citing the charges against Bongiovanni, alleged that based upon "false statements" made by Bongiovanni, Militello was "coerced into accepting a plea bargain for 30 years." *See*, Dkt. 84, p. 2; Dkt. 86, p. 1.  Following each motion, this Court denied Militello's request for appointment of counsel, citing the fact that there was no proceeding before the Court at that time and that the allegations set forth in Militello's motions were conclusory.  Dkt. 85, 87, and 89. Militello appealed this Court's denial of his motion to appoint counsel to the Second Circuit.  Dkt. 91.  On January 28, 2021, the Second Circuit denied Militello's motion for appointment of counsel and dismissed his appeal "because it 'lacks an arguable basis either in law or in fact.'" Dkt. 105.

waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed to enunciate any rationale for the defendant's sentence; and (5) where the waiver was unsupported by consideration." *Id*. at 121-22 (citation modified).  This Court finds that none of those factors are present here.

Finally, and as already mentioned, this Court generally does not have jurisdiction to address a successive motion without authorization from the Second Circuit and is required to transfer such a motion to the Second Circuit if doing so is in the interest of justice. *See* 28 U.S.C. Sections 2255(h) and 2244(b)(3); *see also Liriano v. United States*, 95 F.3d 119, 123 (2d Cir.1996). "However, a district court need not transfer the second or successive motion if it is wholly without merit; the court should instead dismiss the motion if it is clear that the narrow set of factual predicates for relief on a second or successive section 2255 petition have not been made out." *Acosta v. United States*, 197 F. Supp. 3d 553, 556 (S.D.N.Y. 2016) (quoting *Avendano v. United States*, No. 02–CV–1059, 2014 WL 7236036, at *2 (S.D.N.Y. Dec. 19, 2014)).

To proceed with a successive motion based upon "newly discovered evidence," Militello must demonstrate that his request contains "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder

30

would have found the movant guilty of the offense." See, 28 U.S.C. § 2255(h)(1).

Because this Court, for the reasons set forth above, determines that Militello cannot

meet his burden under that standard, this Court declines to transfer his letter

requests as second or successive motions because they are "wholly without merit."

*United States v. Severino*, No. 01 CR. 302 (JFK), 2022 WL 4008231, at *2 (S.D.N.Y.

Sept. 2, 2022); *see also*, *United States v. Peebles*, No. 09-CR-331-A, 2026 WL

157524, at *7 (W.D.N.Y. Jan. 21, 2026)("transfer is unnecessary where the second

or successive habeas corpus application is wholly without merit.").

Accordingly, to the extent Militello's motions filed at Dkt. 110, 111, and 121,

are properly construed as requests under §2255, they are also **DENIED**.

### D. <u>Motion To Reduce Sentence</u>    (Dkt. 149)

Militello next argues that he is entitled to a sentence reduction under the First

Step Act.  Dkt. 149.  Section 404 of the First Step Act "addressed the retroactive

application of the Fair Sentencing Act's reforms." *United States v. Johnson*, 961 F.3d

181, 185 (2d Cir. 2020). More specifically,

> Section 404 of the First Step Act authorizes district courts to reduce
> sentences they previously imposed for a "covered offense," which the
> statute defines as "a violation of a Federal criminal statute, the statutory
> penalties for which were modified by section 2 or 3 of the Fair
> Sentencing.

*United States v. Johnson*, 961 F.3d at 183.

However, Militello's conviction under the Superseding Information was under

21 U.S.C. § 841(b)(1)(C), the penalties for which were not modified by section 2 or 3

of the Fair Sentencing Act.  As the Supreme Court has recognized, a conviction

under 21 U.S.C. § 841(b)(1)(C) is not a "covered offense" under Section 404 of the

First Step Act. *See*, *Terry v. United States*, 593 U.S. 486, 494 (2021).

To be sure, the First Step Act changed the requirements for an enhanced

sentence under the penalty provisions set forth in 21 U.S.C. §§ 841(b)(1)(A) and

841(b)(1)(B).  Specifically, for those penalty provisions, the definition of a qualifying

offense under § 851 was changed from "a felony drug offense" to one for "a serious

drug felony."  According to Militello, since his New York State felony drug did not

constitute a "serious drug felony," the maximum sentence for his conviction, which

was under 21 U.S.C. §841(b)(1)(C) should not have been increased from twenty to

thirty years.

Assuming for the sake of argument that Militello's conviction for Criminal

Possession of a Narcotic Drug in the Fourth Degree, a Class C felony under New

York Penal Law §220.09, does not constitute a "serious drug felony," it

unquestionably does constitute a "drug felony."  The penalty provision applicable to

Militello's conviction under the Superseding Information to which he pleaded guilty,

*i.e.*, 21 U.S.C. § 841(b)(1)(C), was not altered by the First Step Act. That statute

continues to provide, as it did at the time that Militello was sentenced, for an

increase in the statutory maximum penalty from 20 to 30 years where defendant has

a final "prior conviction for a felony drug offense."  *See generally*, *Reid v. United*

*States*, No. 12-CR-200-A, 2024 WL 3904569, at *11, n. 5 (W.D.N.Y. Aug. 22, 2024).

Since Militello's prior drug felony conviction provided a proper basis to enhance his

maximum sentence under §841(b)(1)(C) —both at the time he was sentenced and following the passage of the First Step Act—his claim is frivolous. Even if considered as a second or successive §2255 petition, because the request is entirely without merit, there is no need to transfer it to the Second Circuit. *See*, *United States v. Peebles*, 2026 WL 157524, at *7; *United States v. Severino*, 2022 WL 4008231, at *2.

In view of the foregoing, any claim that the First Step Act affords Militello sentencing relief based upon a change in the law is patently frivolous and is **DENIED**.

### E.  Motion for Appointment of Counsel  (Dkt. 122)

Militello has also asked the Court to appoint counsel to represent him on his current claims. There is no constitutional right to representation by counsel in habeas corpus proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). When reviewing a request for appointment of counsel, the Court first considers whether petitioner's claims are "likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). The Court will consider other factors only if the movant meets this threshold requirement. *Id.* at 61–62. Here, for the reasons set forth above, this Court determines that Militello's claims are all without merit.  Since his claims lack substance, Militello's motion for appointment of counsel, *see*, Dkt. 122, is **DENIED**.

**F. Motion to Proceed *in Forma Pauperis*     (Dkt. 123)**

Militello has also filed a motion to proceed *in forma pauperis*.  Dkt. 123.  That motion, for the reasons set forth above, is also **DENIED**.

**III.  CONCLUSION**

For the foregoing reasons, Militello's motions (Dkt. 110, 111, 121, 122, 123, and 149) are all **DENIED**.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis status* is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  Finally, the Court observes that it strongly suspects that Militello, in filing his motions, may have purposely avoided characterizing them as motions brought pursuant to 28 U.S.C. § 2255 in an effort to avoid having them characterized as second or successive motions filed without prior permission from the Second Circuit Court of Appeals. Accordingly, Militello is cautioned that any future motions seeking to attack his conviction or sentence filed without prior permission from the Second Circuit will be summarily denied by this Court.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  March 10, 2026
        Buffalo, New York